**Marlene WAGNER et al., Plaintiffs,**

**v.**

**BURLINGTON NORTHERN, INC., a corporation, and the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, Lodge No. 1047, Defendants.**

No. 75 C 683.

United States District Court,
N. D. Illinois, E. D.

April 14, 1976.

Cornelius E. Toole, Chicago, Ill., for plaintiffs.

Solomon I. Hirsh and Stephen B. Horwitz, Rosemont, Ill., Barry N. Gutterman, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

This is an action brought by eleven employees against their employer, The Burlington Northern, Inc. (hereinafter "Carrier"), and against their collective bargaining representative, The Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, Lodge No. 1047 (hereinafter "BRAC"), seeking declaratory relief, permanent injunctive relief and damages. In Count I of a two-count complaint, plaintiffs allege that Carrier violated provisions of a Merger Protection Agreement entered into between Carrier and BRAC in the course of a merger which formed Carrier.[1] In Count II, plaintiffs allege that they have individually protested the Carrier's violations to BRAC, but that BRAC has failed to process their grievances in violation of its duty of fair representation.

Following the merger, nine of the plaintiffs were transferred to different seniority districts than those in which they had previously worked (hereinafter "Class I" plaintiffs). They assert that such a transfer violates Article II, Section 1(a)(1)[2] of the Agreement as well as

---

1. The merger which resulted in the creation of the Burlington Northern, Inc. was based upon a merger plan filed by The Great Northern Railway Company, The Northern Pacific Railway Company, The Pacific Coast Railroad Company, The Chicago Burlington & Quincy Railroad Company, and the Spokane, Portland & Seattle Railway Company.

2.  ARTICLE II—CONSOLIDATION
    OF SENIORITY ROSTERS
    Section 1.
       (a) On the date of consummation of the merger, all pre-existing seniority districts

(except those exclusively covering seasonal employes) specified in existing collective agreements between the parties signatory hereto and pre-existing seniority rosters made pursuant to such agreements will be cancelled and abolished and new seniority districts and new seniority rosters will be established in the following manner:

(1) All pre-existing seniority districts or parts thereof located within each of the four regions listed below (and shown on Attachment "1" hereto) and the Chicago and St. Paul General Offices shall be consolidated to

Article V, Sections 1(d) and 1(e).[3] Three of these Class I plaintiffs also allege that Carrier failed to offer a separation allowance to them if they chose to resign their positions (hereinafter "Class II" plaintiffs). The remaining two plaintiffs allege that Carrier has required them to hold a different type of position involving working conditions which they deem undesirable (hereinafter "Class III" plaintiffs). These plaintiffs allege a violation of Article V, Section 1(e). All eleven plaintiffs assert that these acts of Carrier have forced them into a "worse position" with respect to their employment in violation of Section 5(2)(f) of the Interstate Commerce Act of 1887, *as amended* 49 U.S.C. § 5(2)(f) (1971).[4]

Plaintiffs contend that BRAC has failed to properly process the aforementioned grievances. As to the Class II

---

form a new seniority district and shall be so designated:

(i) *Chicago General Offices*

(ii) *Eastern Seniority District*: Chicago, excluding Chicago General Offices, northward to but not including St. Croix Tower, southward to and including Paducah and St. Louis, westward to Missouri River, Iowa-Nebraska and Iowa-Missouri borders, excluding Council Bluffs and Pacific Junction; and including Atchison and Leavenworth.

(iii) *Central Seniority District*: Westward from the Missouri River, Iowa-Nebraska and Iowa-Missouri borders, to but not including Huntley and Fromberg; and including Council Bluffs and Pacific Junction, but excluding Atchison and Leavenworth.

(iv) *St. Paul General Offices*

(v) *Northern Seniority District*: Ashland, Wis., St. Croix Tower and Sioux City westward to and including Opheim, Bainville and to but not including Hesper and Livingston; and excluding St. Paul General Offices.

(vi) *Western Seniority District*: Westward from but not including Bainville; and from and including Hesper and Livingston.

3. (d) A Utility Employe may be required, upon receiving due notice in writing from the New Company, to take an available regular, relief, temporary or seasonal position in his home zone for which he is qualified or has the fitness and ability to become qualified. Available regular or relief positions shall be offered to the Utility Employes in seniority order; however, the requirement to accept the position shall be in the reverse order of seniority. A Utility Employe who refuses to take an available regular, relief, temporary or seasonal position in his home zone for which he is qualified or has the fitness and ability to become qualified shall forfeit all of the benefits of this Agreement commencing with the first day scheduled to work the refused position and continuing until such time as the refused position is discontinued, or unavailable to him, or he secures another available position.

(e) The New Company may, in writing, request a Utility Employe to take an available regular or relief position for which he is qualified or has the fitness and ability to become qualified, in his seniority district which is outside his home zone; however, such requests may only be made in reverse order of seniority to fifty percent (50%) of the number of Utility Employes so employed on January 2 of that year in any given zone or combined zones established pursuant to paragraph (c) of this Section, and then only to Utility Employes who have less than five full years of continuous service on the date this agreement is signed. A Utility Employe requested to accept a regular or relief position for which he is qualified, or has the fitness and ability to become qualified, in another zone in the seniority district must exercise one of the following options within ten (10) calendar days:

(1) Make the transfer with all the benefits contained in Article IX, Section 2 and Article X of this Agreement.

(2) Forfeit all of the benefits of this Agreement for a period of six (6) months.

4. 49 U.S.C. § 5(2)(f) reads:

(f) As a condition of its approval, under this paragraph, of any transaction involving a carrier or carriers by railroad subject to the provisions of this chapter, the Commission shall require a fair and equitable arrangement to protect the interests of the railroad employees affected. In its order of approval the Commission shall include terms and conditions providing that during the period of four years from the effective date of such order such transaction will not result in employees of the carrier or carriers by railroad affected by such order being in a worse position with respect to their employment, except that the protection afforded to any employee pursuant to this sentence shall not be required to continue for a longer period, following the effective date of such order, than the period during which such employee was in the employ of such carrier or carriers prior to the effective date of such order. Notwithstanding any other provisions of this chapter and chapters 8 and 12 of this title, an agreement pertaining to the protection of the interests of said employees may hereafter be entered into by any carrier or carriers by railroad and the duly authorized representative or representatives of its or their employees.

plaintiffs, BRAC has allegedly failed to process the separation allowance grievance to the Special Board created by Article XII, Section 1(a) of the Agreement.[5] As to the remaining plaintiffs, BRAC has allegedly taken no action on their grievances. BRAC in turn denies that these plaintiffs ever filed grievances.

■ If BRAC provided adequate representation, this Court has no jurisdiction to award relief in this case. The parties will be left to the administrative procedures of the Agreement. If a finding were to be made by the Special Board, we could not review the merits of that finding. *Brotherhood of Railway, Airline and Steamship Clerks v. Special Board of Adjustment No. 605*, 410 F.2d 520 (7th Cir. 1969). However, if the union failed to act properly, this Court can adjudicate the rights of the parties stemming from the alleged violations of the agreement.

■ This Court cannot inquire into the adequacy of union representation until it finds that plaintiffs have exhausted their remedies within the union. *Westermayer v. Pullman Co.*, 360 F.Supp. 631, 638 (N.D.Ill.1973). However, since we believe the union has acted properly regarding the grievances that have been adequately alleged, we can assume for purposes of these motions that plaintiffs have exhausted their remedies within the union.

■ Adequacy of union representation is to be judged by the standard set out in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1966). The Supreme Court stated, "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is 'arbitrary, discriminatory, or in bad faith.'" 386 U.S. at 190, 87 S.Ct. at 916, 17 L.Ed.2d at 857. In discussing a union's decision not to take its member's grievance to arbitration, the court stated:

"Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement. . . In providing for a grievance and arbitration procedure which gives the union discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration. . . .

If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation." 386 U.S. at 191, 87 S.Ct. at 917, 17 L.Ed.2d at 858.

In judging the action or inaction taken by BRAC against the *Vaca* standard, this Court will focus on the specific grievances which have allegedly been filed by the plaintiffs with BRAC. Our analysis will be divided among the various grievances mentioned above: (1) Changed seniority districts—Class I; (2) changed job positions—Class II; (3) worse position of employment; and (4) failure to offer a separation allowance—Class III.

5.       ARTICLE XII—DISPUTES

Section 1.

(a) On the date this Agreement is made effective, there shall be established, in accordance with Section 3, Second, of the Railway Labor Act, a Special Board of Adjustment hereinafter referred to as the "Board." This Board shall have jurisdiction of and shall hear and decide any dispute between the parties hereto involving the interpretation or application of any of the terms of this Agreement or of any memorandum of agreement made in connection with this Agreement, which is not settled on the property.

■ Following the merger, Carrier required the Class I plaintiffs to assume a position in a different seniority district than the one in which they had worked prior to the merger. Plaintiffs were required to move from the Chicago General Offices to offices in Cicero, Illinois. Plaintiffs allege that this violates Article V, Sections 1(d) and 1(e) of the Merger Protection Agreement.

A closer reading of the Agreement reveals that an employee can be moved to a different seniority district as long as the new district was in the home zone of that employee. See Article V, Section 1(d). Since, according to Article IV, the home zone of an employee spans a 30-mile radius, plaintiffs have not been moved outside their home zone. Cicero is in the same home zone as Chicago. Moreover, Attachment 2 to the Agreement explicitly states that Chicago and Cicero are in the same home zone.[6] As to the alleged violation of Article V, Section 1(e), since that section deals with transfers outside the home zone, within the same seniority district, no claim is established here by plaintiffs.

■ Therefore, on the basis of the merits of this grievance, it does not appear that BRAC's treatment of the grievance was arbitrary, discriminatory or in bad faith.

■ Next, we consider the claim of the Class II plaintiffs that their move from clerical duties to janitorial duties violated Article I, Section 1(e). These plaintiffs make no allegations that these transfers would come within the terms of that section. The uncontroverted affidavit of Robert Curran states that the transfers were within the same home zone and seniority district. Therefore, on this basis, we believe Class II plaintiffs' grievances were meritless and as such required no action by BRAC. In this matter, BRAC has not breached its duty of fair representation.

■ We turn next to the contention of all eleven plaintiffs that their respective transfers have forced them into a "worse position" with respect to their employment in violation of Section 5(2)(f) of the Interstate Commerce Act, as amended 49 U.S.C. § 5(2)(f)(1975). As to the Class I plaintiffs, the worsened position has resulted from a change in seniority district. As to the Class II plaintiffs, the worsened position has resulted from a change in the type of job being performed. Nowhere do plaintiffs allege that the merger resulted in a decrease in their compensation.

In *Brotherhood of Maintenance of Way Employes v. United States*, 366 U.S. 169, 81 S.Ct. 913, 6 L.Ed.2d 206 (1961), the Supreme Court discussed Section 5(2)(f). In that case, employees about to be discharged following a merger were to receive compensation equivalent to their compensation before the merger. This practice would continue for a period of time equal to their previous employment with the company, not to exceed four years.[7] Similarly, employees transferred to a lower paying position were to be compensated for the resulting difference in wages. The employees filed suit, alleging that despite their receipt of compensation, their discharge or transfer to another position was a worsening of their employment position within the meaning of Section 5(2)(f). The Court held that the legislative history of the bill "clearly reveal[s] an understanding that compensation, not 'job freeze' was contemplated." 366 U.S. at 176, 81 S.Ct. at 916, 6 L.Ed.2d at 211. The Court added that the Interstate

---

6.  ARTICLE IV—HOME ZONES OF
PROTECTED EMPLOYES

Section 1.
(a) The home zone of a Protected Employe is the territory set forth in Attachment 2 hereto or the territory within a thirty (30) mile radius surrounding the employe's railroad work or assigned location.

ATTACHMENT 2
1. Chicago, Cicero, Berwyn, Riverside, Congress Park

7.  49 U.S.C. § 5(2)(f) provides for a maximum of four years. See fn. 6.

Commerce Commission has expressed the opinion that compensation protection was the intendment of § 5(2)(f) and "began imposing compensatory conditions, and only compensatory conditions, in proceedings involving § 5 transactions." *Id.* Here again, therefore, the grievance lacks merit and it cannot be said that in failing to process it, the union has breached its duty of representation. In fact, the union was clearly correct in its decision.

We find it necessary to state that the Court is not placing itself in the position of the union in examining the merits of these grievances. It is not our duty nor is it the proper approach to substitute our judgment for that of the union. We only consider the merits as a means of judging the quality of representation by the union.

■ Finally, the last grievance to be considered is that of the Class III plaintiffs. They allege the failure of the Carrier to offer them a separation allowance which would give them an opportunity to resign and to forego the benefits of the Agreement. The complaint is silent as to whether in fact these employees would have resigned had such an offer been made and whether they will resign now should such an offer be made. In the absence of such an allegation, the Court does not believe that a genuine controversy exists on this issue. The Court does not feel obliged to issue a mere advisory opinion on this aspect of the case. Accordingly, these plaintiffs will be given leave to amend their complaint on this issue to include such allegations if they can.

It is therefore ordered that defendants' motions for summary judgment on Counts I and II will be granted except as to Paragraphs 8, 9 and 10 of Count I, which plaintiffs named therein will be given 21 days to amend. Defendants shall have 21 days thereafter to plead to any amendment.